**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC(RNBx)                          Date:  November 26, 2012

Title: TOM CASAULT ET AL. V. FEDERAL NATIONAL MORTGAGE ASSOCIATION ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

Julie Barrera                                         N/A
Courtroom Clerk                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                  None Present

PROCEEDINGS: (IN CHAMBERS):   **ORDER: (1) GRANTING SERVICER DEFENDANTS' MOTION TO DISMISS IN PART WITH PREJUDICE AND IN PART WITHOUT PREJUDICE; AND (2) GRANTING TRUSTEE DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE.**

Before the Court are two motions to dismiss Plaintiffs' Second Amended Complaint: (1) Servicer Defendants' Motion to Dismiss; and (2) Trustee Defendants' Motion to Dismiss. After reviewing the motions, oppositions, and replies, the Court: (1) GRANTS Servicer Defendants' Motion to Dismiss and DISMISSES IN PART WITHOUT PREJUDICE AND IN PART WITH PREJUDICE; and (2) GRANTS Trustee Defendants' Motion to Dismiss WITH PREJUDICE.[1]

**I.     Introduction**

Plaintiffs filed a Second Amended Complaint ("SAC") against Servicer Defendants and Trustee Defendants on behalf of themselves, as well as seeking to

---

[1] The Court finds the matter appropriate for decision without oral argument.  Fed R. Civ. P. 78; Local R. 7-15.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                     Date:  November 26, 2012
                                                    Page 2

---

represent other similarly situated individuals, for claims that concern the mortgage loan modification and foreclosure process.[2]

### a.  Procedural History

The complaint was originally filed on December 20, 2011. The case was transferred to the Southern Division of the Central District of California due to related case number SACV 11-1345 filed on September 6, 2011 listing many of the same plaintiffs and defendants. Case number SA CV 11-1345 was voluntarily dismissed in favor of the present case. On January 17, 2012, Plaintiffs filed a First Amended Complaint ("FAC"). (Dkt. 7.) On March 9, 2012, the case was transferred to this Court.

On April 4, 2012, Plaintiffs filed a Motion for Transfer and Consolidation of Case to the District of Massachusetts. (Dkt. 67.) The case was stayed pending the outcome of the Multi District Panel ("MDL Panel") decision regarding the transfer of the case. On June 11, 2012, the MDL Panel denied transfer. (Dkt. 76.) This Court gave Plaintiffs leave to file a Second Amended Complaint.

### b.  The SAC and Motions to Dismiss

On July 25, 2012, Plaintiffs filed the SAC. (Dkt. 81.) The SAC includes three categories of claims: (1) claims against Loan Originator Defendants; (2) claims against Loan Servicer Defendants; and (3) claims against Trustee Defendants. SAC at 5-6. On September 17, 2012, Plaintiffs dismissed claims against the Loan Originator Defendants by stipulation. Originator Defs. Stip. (Dkt. 112.)

The claims against Loan Servicer Defendants are based on Plaintiffs' allegations that the Servicer Defendants' offers and conduct regarding loan modifications were fraudulent and violated state laws. SAC at 6. The Servicer Defendants identified are: OneWest Bank, FSB; BAC Home Loan Servicing, LP; Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A.; Chase Home Finance, LLC; Rushmore Loan Management Services; and Citi Mortgage, Inc.[3]

---

[2] The named Plaintiffs include: Tom Casault, Ot Bonsynat, Alexander Ros, Ranee Ly, Amy Chamreun, Bill Eam, John Alvino Alva, Jr., Mary Anne Hem, Otis Haynes, Sophy Bonsynat, Sopheap Soun, Chanserey Ouk, Lakhena Chhuon, Mum Roeun, Chetra Khut, and Rachel New.

[3] There were additional defendants identified as Servicer Defendants, but they have been dismissed by stipulation. (Dkt. 106.) On August 24, 2012, Defendant Citi Mortgage submitted a supplement to Servicer Defendants' Motion

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                  Page 3

---

The claims against Trustee Defendants are based on Plaintiffs' allegations that their properties were foreclosed upon when their loans were not in default. SAC at 6. The SAC identified Aurora Loan Services, LLC, Wells Fargo Bank, N.A., U.S. Bank, N.A., Bank of America, N.A., Bank of New York Mellon, and La Salle Bank, N.A. as well as Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac") in their roles as trustees as the Trustee Defendants. The allegations of improper foreclosure also implicate Servicer Defendants.[4] Any claims against Servicer Defendants regarding their involvement with foreclosures and their interactions with the Trustee Defendants are addressed with the claims against the Trustee Defendants.

On August 24, 2012, Defendants filed a Motion to Dismiss claims against Servicer Defendants pursuant to Federal Rule of Civil Procedure 12(b)(b) for failure to state a claim.[5] Servicer Defs.' Mot. (Dkt. 93). On September 14, 2012, Plaintiffs filed an Opposition to the Servicer Defendants' Motion. Opp. (Dkt. 107). Servicer Defendants filed a Reply on September 24, 2012. Rep. (Dkt. 119).

On August 24, 2012, Defendants filed a Motion to Dismiss claims against Trustee Defendants pursuant to Federal Rule of Civil Procedure 12(b)(b) for failure to state a claim. Trustee Defs.' Mot. (Dkt. 101). On September 14, 2012, Plaintiffs filed an Opposition to the Servicer Defendants' Motion. Opp. (Dkt. 108). Servicer Defendants filed a Reply on September 24, 2012 . Rep. (Dkt. 121).

---

to Dismiss adding that the SAC did not make any specific allegations against Defendant Citi Mortgage. Citi Mortgage Supplement (Dkt. 102) at ¶ 1. The SAC's Servicer Defendant portion contains a section where each Plaintiff alleges claims against his or her respective Servicer Defendant, and no Plaintiff added facts stating a claim against Defendant Citi Mortgage. Because the SAC does not adequately "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Defendant Citi Mortgage is dismissed as a Servicer Defendant. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claims against Defendant Citi Mortgage as a Trustee Defendant are addressed with the other Trustee Defendants.

[4] In the Claims against Trustee Defendants Section, the term "Servicer Defendant" includes lending institutions not identified in the previous section. The SAC named the following defendants for their involvement with the allegations against Trustee Defendants: OneWest Bank, FSB; Washington Mutual Bank, FA; JPMorgan Chase Bank, N.A.; Bank of America, N.A.; BAC Home Loan Servicing, LP; Citi Mortgage, Inc.; U.S. Bank, N.A.; Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A.; Chase Home Finance, LLC; Bank of New York Mellon; La Salle Bank, N.A.; Rushmore Loan Management Services, LLC; PNC Bank, N.A; Fannie Mae; and Freddie Mac.

[5] On August 24, 2012, Defendant Rushmore Loan Management Services, LLC ("Defendant Rushmore") filed a separate Motion to Dismiss as both a Servicer and a Trustee Defendant. Rushmore Mot. (Dkt. 95). As the Motions to Dismiss are based on the same amended complaint, the Court will address all Motions to Dismiss in this Order and any decisions herein stated will apply to all Defendants as relevant.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 4

---

The Court will address both Motions in this Order and will provide additional factual information as necessary.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, this court accepts as true a plaintiff's well-pled factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Under the incorporation by reference doctrine, the court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) can not be granted based upon an affirmative defense unless that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For example, a motion to dismiss may be granted based on an affirmative defense where the allegations in a complaint are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in Plaintiff's favor, nonetheless show that the affirmative defense "is apparent on

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 5

---

the face of the complaint." *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

Additionally, Federal Rule of Evidence 201 allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"), *overruled on other grounds by* 307 F.3d 1119, 1125-26 (9th Cir. 2002). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Dismissal without leave to amend is appropriate only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made). Rule 15(a)(2) of the Federal Rules of Civil Procedure states that leave to amend should be freely given "when justice so requires." This policy is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity."). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)). Rule 9(b)'s heightened pleading standard applies not only to federal claims, but also to state law claims brought in federal court. *Id.* at 1103. This heightened pleading standard ensures that "allegations of fraud are

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                                          Page 6

---

specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985).

However, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Neubronner*, 6 F.3d at 672 (explaining that Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge, such that a plaintiff cannot be expected to have personal knowledge).

## III.   Discussion

### a.  The Court GRANTS Servicer Defendants' Motion to Dismiss

Plaintiffs' claims against Servicer Defendants are based on Servicer Defendants' offering and processing loan modifications.

In response to the mortgage crisis, the Departments of the Treasury and Housing and Urban Development, created the Home Affordable Modification Program ("HAMP"). HAMP's purpose is to assist borrowers who are unable to continue making their mortgage payments by creating a program to modify the borrowers' loans and provide guidelines for participating lending institutions. HAMP Supplemental Directive 09-01 (Dkt. 94) Ex. 2.

Plaintiffs allege that through Servicer Defendants' websites and mail offers, Plaintiffs became aware that Servicer Defendants were offering loan modifications to struggling borrowers. SAC at 33. Plaintiffs applied for loan modifications believing that the offers were made in good faith and would comply with HAMP guidelines. *Id.* at 34. Plaintiffs allege that Servicer Defendants either never intended to modify their loans or purposely mismanaged and delayed Plaintiffs' loan application process. *Id.*

In connection with these allegations, Plaintiffs bring the following claims: (1) fraud as defined in California Civil Code; (2) violations of California Civil Code § 1788; (3) violations of California Business and Professions Code § 17200; and (4) negligence.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                     Date:  November 26, 2012
                                                    Page 7

---

###### i.      Fraud (Cal. Civ. Code 3294)

"'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

###### 1.  Plaintiffs' claims for fraud based on the initial loan modification offers fail

Plaintiffs claim that the Servicer Defendants' initial offers of a loan modification, as advertised on their websites or communicated through the mail, were misrepresentations. Opp. (Dkt. 107) at 10. Plaintiffs allege that the Servicer Defendants' CEOs had implemented a company-wide scheme to keep Plaintiffs' loans in a perpetual state of default. SAC (Dkt. 81) at 34. Plaintiffs allege that the Defendants grouped Plaintiffs' loans into a "pool of mortgages," which was then sold to a Real Estate Mortgage Investment Conduit ("Trust"). *Id.* at 29-30. The Servicer Defendants are paid by the Trust to handle the day-to-day tasks, such as collecting mortgage payments. *Id.* at 31. Thus, according to Plaintiffs, Servicer Defendants had incentive to keep Plaintiffs' loans in default in order to continue charging the Trust servicing fees. *Id.* at 36. Furthermore, Plaintiffs allege that many, if not all, of their loans were held in Trusts governed by trust prospectuses, prospectus supplements, or pooling and servicing agreements ("PSAs"). Many of the prospectuses and PSAs banned loan modifications or created a high bar for loan modification approval. *Id.* at 45. Therefore, Servicer Defendants never intended to modify the Plaintiffs' loans because they were prohibited from doing so by the PSAs. *Id.* Because Servicer Defendants had incentive not to modify Plaintiffs' loans or were prohibited from modifying the loans, Servicer Defendants' offers of loan modifications were misrepresentations because the Servicer Defendants never intended to grant loan modifications.[6] Plaintiffs claim because they saw Defendants were

---

[6] Servicer Defendants submitted for judicial notice the Making Homes Affordable Program Performance Report Through May 2012, which includes a summary of the number of permanent and trial loan modifications granted by each Servicer Defendant. Rep. (Dkt. 119) at Ex. 2. As of April 6, 2009, Servicer Defendant Bank of America, N.A.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                  Page 8

---

offering loan modifications via HAMP, they reasonably relied on the loan modification offers. *Id.* at 34.

　　Plaintiffs' allegations suffer from several insurmountable flaws. First, there is a lack of particularity in the pleading. When stating a claim for fraud, the pleading party must specify the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, the Plaintiffs offer a list of Defendants and the names of their CEOs allegedly responsible for implementing fraudulent company policies. SAC at 46-47. The Plaintiffs also offer a list of fraudulent activity that took place under the direction of the CEOs, e.g.: (a) "falsely deny receiving documents from Plaintiffs and [other loan modification applicants]"; (b) lying to Plaintiffs regarding their loan modification eligibility; (c) intentionally delaying communication with Plaintiffs regarding eligibility; (d) purposely not communicating with Plaintiffs about the status of their loan modification requests; (e) purposely failing to properly review Plaintiffs' modification requests; and (f) purposely hindering Plaintiffs' loan modification process by allowing the applications to expire and requiring Plaintiffs to resubmit and restart the process.[7] SAC at 45. A list of names and a list of activities strung together by a theory do not rise to the level of pleading necessary for fraud.

　　The next challenge to pleading fraud is that Plaintiffs cannot satisfy the reasonable reliance element. Plaintiffs acknowledge that HAMP does not create a private cause of action,[8] yet they relied on the loan modification offers because they saw the Defendants were offering loan modifications through HAMP. SAC (Dkt. 81) at 34. As it is pled, the fraud claim appears to be a workaround against directly stating a claim against Defendants for violating HAMP. Effective June 1, 2010, HAMP was updated to require a servicer only offer trial period loan modification plans based on verified income documentation. HAMP Supplemental Directive 10-01 (Dkt. 101) at Ex. 2. This change to the program indicates that Plaintiffs were among many borrowers who believed that applying for a loan modification or admittance into a trial period loan modification meant relief was underway. However, at the time Plaintiffs were applying for loan modifications, modifications were based on unsubstantiated, self-reported numbers and

---

has started 184,160 permanent loan modifications. Servicer Defendant Wells Fargo Bank, N.A. has started 136,647 permanent loan modifications. Servicer Defendant OneWest Bank has started 38,864 permanent loan modifications. All statistics exclude FHA-HAMP modifications and are limited to HAMP first lien modifications. *Id.*

[7] This list of allegations ("Loan Modification Allegations") is repeated several times throughout the SAC.

[8] "However, it is well established that there is no private cause of action under HAMP." *Singh v. Wells Fargo Bank*, 1:10-CV-1659 AWI SMS, 2011 WL 66167 (E.D. Cal. Jan. 7, 2011) (collecting cases).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 9

---

thus were subject to final approval by Defendants.[9] Without alleging that Defendants promised or guaranteed a loan modification, Plaintiffs cannot state that their reliance was reasonable.

Despite Plaintiffs' claims to the contrary, the claim for fraud based on the initial loan modification offer is too closely tied to a claim for fraud based on violations of HAMP to be viable. Additionally, if Defendants only offered a conditional trial period or an offer to be considered for a modification, Plaintiffs could not have reasonably relied on the loan modification offer. Thus, the claim for fraud based on the initial loan modification offer is DISMISSED WITHOUT LEAVE TO AMEND.

> **2.  Plaintiffs may have a claim for fraud based on Defendants' conduct after loan modification was commenced**

While Plaintiffs may not be able to state a claim for fraud based on the initial offers for a loan modification, Plaintiffs may have a claim for fraud based on Defendants' actions after the commencement of the loan modification process. Plaintiffs would have to amend the complaint to plead their claims with more specificity and separate allegations that rely on HAMP guidelines.

Upon examination of the claims for fraud described by the seven plaintiffs against the Servicer Defendants, the Court finds each one fails for lack of specificity. The seven claims generally follow a similar fact pattern outlined below:

(1) Borrower takes out a mortgage.
(2) Borrower runs into financial trouble which leads to a default.
(3) Borrower is enticed by Lender to apply for a loan modification.
(4) Lender engages Borrower in loan modification discussion through its customer service agents and, in compliance with a fraudulent corporate policy, Lender fraudulently misapplies payments, lies to Borrower about receipt of requested loan modification documents, and/or commences or

---

[9] *JP Morgan Chase Bank, Nat'l Ass'n v. Ilardo*, 940 N.Y.S. 2d 829, 836 (Sup. Ct. 2012) ("Prior to June 1, 2010, servicers were permitted to rely upon borrowers' unverified verbal representations when determining whether the borrower qualified for a [Trial Period Plan].").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 10

_____

continues foreclosure processes while allegedly contemplating loan
modifications.
(5) Borrower loses home at foreclosure sale or remains uncertain of the loan
    modification status, all the while incurring financial expenses and
    emotional stress.

The Court chooses to highlight Plaintiff John Alvino Alva, Jr.'s claim as it came
close to pleading a viable claim for fraud. The case of Plaintiff Alva versus Defendants
Bank of America, N.A. and BAC Home Servicing, LP is described below:

(1) Plaintiff Alva gave a Deed of Trust to PMC Bancorp in exchange for a
    $367,000.00 loan to purchase the property located at 11526 Ligget St.,
    Norwalk, CA 90650 ("the property"). Shortly after executing the Deed of
    Trust, Defendant Countrywide Home Loans obtained the servicing rights to the
    mortgage, which was taken over by Defendant BAC Home Servicing, LP
    ("Defendant BAC Home Servicing") as Countrywide's successor. SAC at 51.
(2) On January 2009, Plaintiff Alva experienced financial hardship. He stopped
    making his mortgage payments. *Id.*
(3) On June 2009, Defendant BAC Home Servicing mailed Plaintiff Alva an offer
    to modify his loan. *Id.* Defendant BAC Home Servicing's website further
    provided assurances that the loan modification process would be conducted in
    good faith. *Id.* Plaintiff Alva applied for a loan modification.
(4) Plaintiff alleges that Defendant BAC Home Servicing's customer service
    agents did the following:
    (a) falsely denied receiving documents from Plaintiff when applying for
        modification consideration
    (b) lied to Plaintiff regarding his eligibility for modification
    (c) intentionally delayed communicating with Plaintiff about his eligibility
    (d) purposely failed to communicate with Plaintiff about the status of his
        modification requests
    (e) purposely failed to properly review Plaintiff's request for modification
        assistance
    (f) purposely hindered Plaintiff's modification process by repeatedly
        allowing Plaintiff's modification documents to expire and then
        requesting Plaintiff resubmit his request. *Id.* at 52.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                                    Page 11

---

(g) On December 2009, Plaintiff Alva was granted a trial period modification. Plaintiff Alva claims he made all three trial period payments on time. Furthermore, he alleges he made an additional three timely payments at the modified rate. Instead of changing Plaintiff Alva's loan modification from trial basis to permanent, Defendant BAC initiated foreclosure processes against the Plaintiff. *Id.* at 53.
Plaintiff alleges the customer service agents were acting on a company policy approved and ordered by Defendant BAC's CEO and senior management. This conduct occurred over a year-and-eight-month period. *Id.* at 52.

(5)       Plaintiff Alva's home was sold at a trustee's sale on March 10, 2011. He lost equity in his home, was forced to pay moving and  relocating expenses, lost his property interest, had a negative impact on his credit rating, lost his home, and suffered extreme emotional distress. *Id.* at 53.

Plaintiff Alva fails the first element of fraud because he cannot in conclusory terms allege that Defendants' customer service agents "lied about his eligibility" or "fraudulently misplaced documents" without stating the "who, what, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). While a plaintiff's allegations are typically accepted as true and construed in the light most favorable to the plaintiff, when alleging fraud the pleading standards are heightened. Fed. R. Civ. P. 9. Plaintiff Alva does not support his claims with names or dates. As illustrated with Plaintiff Alva above, it is part (4) of the general fact pattern that lacks sufficient specificity to grant relief.

Thus, Plaintiffs' claims on the basis of fraud are dismissed for failing to state a claim upon which relief can be granted due to lack of particularity in pleading.

### 3.  Plaintiffs should be granted leave to amend their claim for fraud

Leave to amend should be denied "only when the court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Here, the Court finds that if the Plaintiffs added specificity, namely names, dates, places, to their allegations, the claims for fraud may be cured by amendment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                          Date:  November 26, 2012
                                                          Page 12

---

Additionally, the Plaintiffs will have to plead that the damages caused were due to
a justifiable reliance on a misrepresentation and not due to Plaintiffs' failures to pay their
mortgage. In Plaintiff Alva's case, for example, Defendant BAC noticed Plaintiff Alva of
a trustee's sale set for November 18, 2009. SAC at 52. Although the record is silent on
this detail, the trustee's sale presumably was postponed or cancelled as Plaintiff was
approved for a trial period loan modification in December 2009. *Id.* Plaintiff Alva alleges
he then made six timely payments at the loan modification rate. *Id.* at 53. The next date
provided in the record is February 10, 2011, when Plaintiff Alva receives notice of the
trustee's sale set for March 10, 2011. *Id.* at 52-53. The property is sold on March 10,
2011. *Id.* at 53.

The facts as stated above raise the question whether the property was sold as part
of a fraudulent scheme or because Plaintiff Alva stopped making payments on his
mortgage after the six timely payments in 2010, and therefore Defendant BAC was
exercising its rights as a lender by foreclosing on the property in 2011. Clarification on
this final element of fraud would be relevant to determine whether Plaintiff is entitled to
the damages he claims.

Because the Plaintiffs' allegations of fraud lack particularity, the Court GRANTS
Defendants' Motion to Dismiss. Because the Plaintiffs could cure the deficiencies in the
allegations based on the Defendants' actions after the loan modification discussions
began by bolstering their allegations with factual substance, these claims for fraud are
DISMISSED WITHOUT PREJUDICE.

## ii.     Violations of California Civil Code § 1788

California Civil Code § 1788 ("the Rosenthal Act" or "the Act") is a statute
implemented to stop unfair or deceptive debt-collecting practices. Cal. Civ. Code §
1788.1(b). Section 1788.17 of the Act incorporates by reference Sections 1692(b) to
1692(j) of the federal government's Fair Debt Collection Practices Act ("FDCPA"). Cal.
Civ. Code §1788.17; 15 U.S.C. §§ 1692(b)-(j). Under the FDCPA, a debt collector may
not use "any false, deceptive, or misleading representation or means in connection with
the collection of any debt" or "unfair or unconscionable means to collect or attempt to
collect any debt." 15 U.S.C. §§ 1692(e)-(f). "To evaluate claims under the Rosenthal Act,
the Court must consider whether the alleged communications from the debt collector

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 13

---

would likely mislead the 'least sophisticated debtor.'" *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir.2007).

Plaintiffs claim Defendants, in their roles as "debt collectors," violated the Rosenthal Act with their fraudulent acts while "attempting to collect a debt." SAC at 83. Plaintiffs list Defendants' violations as follows: (1) falsely denying receiving documents from Plaintiffs and others regarding their eligibility for modification; (2) lying to Plaintiffs and others regarding their eligibility for modification; (3) intentionally forcing Plaintiffs and others to wait months or years before determining and communicating modification eligibility; (4) purposefully failing to communicate deadlines, incompleteness of documentation, status of modification requests and risk of eligibility loss to Plaintiffs and others; (5) purposefully failing to properly review Plaintiffs' and others requests for modification assistance; (6) falsely denying eligibility when eligibility should have been granted; (7) purposefully allowing Plaintiffs' and others modification documents to continually expire, requiring resubmission; (8) and employing all manner of hindering the modification process in order to keep applicants in abeyance, in a deliberate effort to keep their mortgage loans in a near perpetual state of default, all as part of a well organized fraudulent scheme to increase corporate profit through gains from the servicing of defaulted mortgage loans. *Id.* at 83-84.

## 1. Plaintiffs did not properly plead that Servicer Defendants are "debt collectors" within the meaning of the FDCPA

A "debt collector" as defined by the FDCPA is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA distinguishes a "debt collector" from a "creditor" who is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Thus, "FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt, *so long as the debt was not in default at the time it was assigned*." *Nool v. HomeQ*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                          Date:  November 26, 2012
                                                        Page 14

---

*Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (citing to *Perry v. Stewart Title
Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)) (internal quotations omitted) (emphasis added).

        Although Plaintiffs allege Servicer Defendants are debt collectors, they do not
support their allegation with any facts that show how Servicer Defendants were acting in
a debt collecting capacity within the meaning of the FDCPA. "[A] plaintiff's obligation
to provide the 'grounds' of his 'entitlement to relief' requires more than labels and
conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Plaintiffs
have merely labeled the Servicer Defendants debt collectors and repeated the allegations
they raised under their fraud claim. Plaintiffs would have to plead that the Servicer
Defendants were assigned defaulted loans for the purpose of collection. *Nool*, 653 F.
Supp. 2d at 1053.  This allegation may not be accurate for any of the seven Plaintiffs.

        **2.  Plaintiffs did not properly plead Servicer
             Defendants were "collecting a debt" within the
             meaning of the FDCPA**

        In *Lucia v. Wells Fargo Bank*, the court found Plaintiffs' allegations that "the
communications from Wells Fargo demanded three Trial Period payments and indicate[d]
that the borrower [was] required to pay the debt" were "sufficient to demonstrate a
demand for payment in support of a Rosenthal Act claim." *Lucia v. Wells Fargo Bank,
N.A.*, 798 F. Supp. 2d 1059, 1071 (N.D. Cal. 2011).[10]

        Under the FDCPA, a letter that does not demand payment but simply informs the
borrowers of the status of their account is not considered communication "in the
collection of a claim." *Walcker v. SN Commercial, LLC*, 286 F. App'x 455, 457 (9th Cir.
2008) (citing to *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th
Cir.1998)). The Ninth Circuit applied this reasoning to dismiss a claim brought by
plaintiffs alleging that the loan servicer's letters informing plaintiffs that their loan had
been transferred and offering the plaintiffs a "fresh new start with their outstanding

---

[10] However, the *Lucia* court ultimately found that the "alleged communications do not constitute false, deceptive or
misleading statements that Wells Fargo promised a permanent loan modification if the borrower successfully makes
three Trial Period payments." *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 1059, 1071-72 (N.D. Cal. 2011).
The court reasons that "[t]he TPP Contract operative at the time states that the TPP 'is not a modification of the
Loan Documents' and that 'the Lender will not be obligated or bound to make any modification of the Loan
Documents if I fail to meet any one of the requirements under this Plan.'" *Id.* at 1072. The court dismissed the
Rosenthal Act claim. *Id.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 15

---

payments" were attempts to collect a debt. *Walcker*, 286 F. App'x at 457. The Ninth
Circuit found that these letters were informational and not attempts to collect debts.[11] *Id.*

       In the SAC, Plaintiffs allege Servicer Defendants are "attempting to collect a
debt." SAC at 83. In Plaintiffs' Opposition, Plaintiffs state that "whether or not
Defendants were allegedly acting as debt collectors or attempting to collect a debt . . .
will require factual development on a number of fronts." Opp. at 16. Plaintiffs clarify that
they "may produce evidence that the allegedly misrepresentative reliance inducing offers
of assistance mailed by Defendants to Plaintiffs state that said offers were attempts to
collect debts." *Id.* Plaintiffs once again provide little factual grounds to grant relief as the
coy "may produce evidence" language in the Opposition will not suffice. The Plaintiffs
received copies of these offers and allegedly relied upon them. SAC at 83-84. If the loan
modification offers stated on their face that they were also attempts to collect a debt,
Plaintiffs should so state. Merely labeling the Defendants' actions "attempts to collect a
debt" without alleging facts that show Defendants were acting in a debt-collecting
capacity will not survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

       The Plaintiffs' ability to properly plead that Defendants' misrepresentations took
place while collecting a debt is not dependant on receiving discovery from the
Defendants. It is not clear what "factual development on a number of fronts" is necessary
to state that the Servicer Defendants were acting in a debt-collecting capacity. This is not
a scenario where Defendants have exclusive knowledge on whether their loan
modification offers stated that they were attempts to collect debts. The Court cannot
determine whether Plaintiffs' allegations are plausible without first receiving "well-
pleaded, nonconclusory factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 680
(2009). Upon amendment, Plaintiffs would have to plead their claim with sufficient facts
to determine whether Defendants' communications were attempts to collect debts or were
simply informational communications.

---

[11] Although *Walcker* was decided under Washington state law, the Ninth Circuit based its decision on the Seventh
Circuit's interpretation of the FDCPA. *Walcker*, 286 F. App'x at 457; *Bailey*, 154 F.3d at 388-89. Here, Plaintiffs
seek relief under California's Rosenthal Act, which incorporates by reference the FDCPA. Cal. Civ. Code §
1788.17.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                                    Date:  November 26, 2012
                                                                                            Page 16

---

### 3.  Plaintiffs' pleadings based on fraud are insufficient

Construing the SAC in the light most favorable to Plaintiffs, the Court finds that even if the Rosenthal Act claim were not dismissed for the aforementioned reasons, the allegations against the Servicer Defendants are not pled with sufficient particularity. Plaintiffs' claims are based on alleged fraudulent activity, and thus must include the "who, what, when, where, and how" of the fraudulent activity.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

For the foregoing reasons, Plaintiffs' claims of violations of the Rosenthal Act are DISMISSED WITH LEAVE TO AMEND. Plaintiffs' third amended complaint would have to properly plead that Servicer Defendants are debt collectors and that their violations of the Rosenthal Act occurred while collecting a debt, as well as plead the violations with sufficient specificity to state a claim upon which relief can be granted.

### iii.      Violations of California Business and Professions Code § 3602

The Unfair Competition Law ("UCL"), codified as California Business and Professional Code § 17200, was designed to protect consumers and competitors by promoting fair competition in the commercial market. *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1470 (2006). To allege a UCL claim, a plaintiff must show that the defendant's business practice was "unlawful, unfair, or fraudulent" by stating with reasonable particularity the facts supporting the violations. Cal. Bus. & Prof. Code § 17200 (West 2012); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993). Although the UCL's scope is broad, violations that sound in fraud must meet the pleading requirements under Federal Rule of Civil Procedure 9(b), which require the "who, what, when, where, and how" of the fraudulent misrepresentation. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). Alternatively, a plaintiff "may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct." *Vess*, 317 F.3d at 1104.  "In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 17

---

### 1.  Unlawful Practices

In order to allege a claim under the "unlawful" prong of the UCL, Plaintiffs must prove a law has been broken. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

Plaintiffs allege Defendants' conduct violated the Rosenthal Act; breached duties of good faith and fair dealing; and committed "other common law violations (fraud and misrepresentation)." SAC at 79. As the Court has dismissed Plaintiffs' fraud and Rosenthal Act claims, the SAC does not properly allege a law has been broken. However, as not all claims were dismissed with prejudice, Plaintiffs may be able to state an unlawful UCL claim upon amendment. Thus, the motion to dismiss Plaintiffs' cause of action for a violation of the UCL based on unlawful acts is GRANTED and DISMISSED WITH LEAVE TO AMEND.

### 2.  Unfair Practices

In order to sustain a cause of action under § 17200 for unfair business practices "[a] plaintiff alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 618 (1993). A claim of unfair competition includes any unlawful, unfair, or fraudulent business practice and unfair, deceptive, untrue, or misleading advertising as well as any act prohibited by the false advertisement section of the Business and Professions Code. Cal. Bus. & Prof. Code § 17200.

California appellate courts disagree on how to define an "unfair" act or practice in the context of a UCL consumer action. Under the balancing test to which some courts adhere, [plaintiff] may be able to prove facts showing that "the harm to the consumer" from [defendant's] solicitation outweighed the solicitation's "utility." . . . Under the alternative test . . . a plaintiff [is required] to show that a practice violates public policy as declared by "specific constitutional, statutory or regulatory provisions[.]"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                       Date:  November 26, 2012
                                                      Page 18

---

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010), cert. denied, 131 S.
Ct. 1817 (2011) (citations omitted).

Plaintiffs' SAC provides little more than a recitation of the elements necessary to
state a claim under the unfair prong of a UCL claim. Plaintiffs state "Servicer Defendants
have in bad faith, engaged in all the acts and omissions described herein" and such acts
"offend public policy, are unethical, oppressive, unscrupulous, or substantially injurious
to customers." SAC at 79. Plaintiffs also allege "the gravity of the harm to Plaintiffs and
others resulting from such unfair acts and practices outweighs any conceivable reasons,
justifications and/or motives of the Servicer Defendants." *Id.*

While Plaintiffs restate the two tests for pleading a claim of unfair practices
under the UCL, they do not state particular facts to support their claim except to re-allege
and incorporate every allegation in the 151-page pleading. This particular claim is
dismissed because "labels and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  *Twombly*, 550 U.S. at 555. Plaintiffs' Opposition provides
slightly more insight into the alleged unfairness by restating the case law on when
advertising can be considered deceptive. Opp. at 14. However, this clarification is too
little, too late. As Plaintiffs could potentially allege facts to show how their case rises to
the level of deceptive advertising, the claim will be dismissed without prejudice. Thus,
the Motion to Dismiss this claim is GRANTED and the cause of action against
Defendants for unfair violations of the UCL is DISMISSED WITH LEAVE TO
AMEND.

### 3.  Fraudulent Practices

Conduct is considered "fraudulent" under the UCL if the conduct is "likely
to deceive." A claim under this prong of the UCL is based on the
reasonable consumer standard, which requires the plaintiff to "show that
members of the public are likely to be deceived." Although a UCL claim
need not plead the elements of common law fraudulent deception, it must
allege the existence of a duty to disclose, as well as reliance[.]

*Pinel v. Aurora Loan Services, LLC*, 814 F. Supp. 2d 930, 941 (N.D. Cal. 2011) (citations
omitted). Violations that sound in fraud must meet the pleading requirements under
Federal Rule of Civil Procedure 9(b), which require the "who, what, when, where, and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 19

_____

how" of the fraudulent misrepresentation. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

        As discussed above, Plaintiffs' allegations of fraud fail because the pleadings lack specificity. Therefore, the UCL claims based on fraudulent practices shall also be DISMISSED WITH LEAVE TO AMEND.

        **iv.      Negligence**

        The elements of negligence include duty, breach of duty, proximate cause, and damages. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007). To determine the scope of a duty*, a court's considerations include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 820 (1997); s*ee also Eric M. v. Cajon Valley Union Sch. Dist.*, 174 Cal. App. 4th 285, 293 (2009). Furthermore, negligence requires that the breach be a "failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court of Santa Barbara Cnty.*, 41 Cal. 4th 747, 754 (2007).

        Financial institutions typically do not owe a duty of care to a borrower when its activities do not exceed those of a conventional money lender. *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991). "Numerous cases have characterized a loan modification as a traditional money lending activity." *Settle v. World Sav. Bank, F.S.B.*, ED CV 11-00800 MMM, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012). *See also, Johnston v. Ally Fin. Inc.*, 11-CV-0998-H BLM, 2011 WL 3241850 (S.D. Cal. July 29, 2011) (quoting *Karimi v. Wells Fargo*, 2011 U.S. Dist. LEXIS 47902, at *7, 2011 WL 2936324 (C.D.Cal.2011) ("In addition, loan modification is an activity that is "intimately tied to Defendant's lending role.")). *But see Ansanelli v. JP Morgan Chase Bank, N.A.*, C 10-03892 WHA, 2011 WL 1134451 (N.D. Cal. Mar. 28, 2011) ("Yet the complaint alleges that defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                          Date:  November 26, 2012
                                                        Page 20

_____

them concerning the trial period plan. Contrary to defendant, this is precisely 'beyond the domain of a usual money lender.'").

Using Plaintiff Alva as the archetype for the Plaintiffs' claims, the allegations as stated in the SAC lack a legal basis. Plaintiff Alva claims Defendant BAC owed a reasonable duty of care when it offered a loan modification, to ensure that Plaintiff was not exposed to substantial risk of loss. SAC at 54. Neither Plaintiff Alva's allegations nor any of the other six plaintiffs cite to any law that establishes this duty in the SAC. In Plaintiffs' Opposition, Plaintiffs cite to *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Ct. App. 1991), which provides a six-factor test for determining when "a financial institution owes a duty of care to a borrower-client." Opp. (Dkt. 107) at 17.

This Court finds that the six-factor test is unnecessary to determine that no duty can be established as many of the California district courts, particularly in the Central District, have found that modifying the terms of a loan is "intimately tied to Defendant's lending role." *Karimi v. Wells Fargo*, 2011 WL 2936324 (C.D. Cal.2011). This finding is consistent with the Court's recent decision in *Alvarado*, where the Court stated that financial institutions would be less likely to assist borrowers with defaulted loans if the financial institution would be held to a higher duty of care for exercising leniency. *Alvarado v. Aurora Loan Services, LLC*, 2012 WL 4475330 (C.D. Cal. Sept. 20, 2012). As Plaintiffs are unable to establish a duty, it is unnecessary to discuss the elements of breach, causation, and damages.

Additionally, as the insufficiency is legal in nature, the Plaintiffs will not be able to plead any facts that would cure the defect in the claim. Thus, the Court finds the cause of action for negligence is DISMISSED WITH PREJUDICE.

> **v.      HOLA Does Not Preempt Claims Against Defendant OneWest**

On August 24, 2012, Defendant OneWest submitted a supplemental Motion to Dismiss arguing that all of Plaintiffs' claims against OneWest are preempted by the Home Owner's Loan Act of 1933 ("HOLA"). OneWest Mot. (Dkt. 96) at 7-9. OneWest argues that it is a federal savings bank and only the Office of Thrift Supervision ("OTS") can impose regulations of a federal savings bank. Thus, Plaintiffs' claims are preempted

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 21

---

by OTS regulation. OneWest Mot. at 7. Plaintiffs did not file an opposition to the HOLA argument. OneWest Notice of Non-Opposition (Dkt. 117) at 2.

The Ninth Circuit stated that although there is typically a presumption against preemption, this presumption does not apply to the field of banking due "a history of significant federal presence" in the field. *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (citing *United States v. Locke*, 529 U.S. 89, 108 (2000)).

> Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts. 12 U.S.C. § 1464. As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2. . . . The regulation reads *inter alia*: OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section. . . .12 C.F.R. § 560.2(a).

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).

Section 560.2(b) provides illustrative examples of the types of law preempted by HOLA, including, without limitation, state laws purporting to impose requirements regarding:

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

and (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(9) and (10).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 22

---

However, Section 560.2(c) provides exceptions to preemption, including claims arising under tort law or any other law "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purpose of paragraph (a) of this section." Thus a claim for fraud, as a tort law claim, is not preempted so long as it does not interfere with Defendants' lending powers.

The OTS has provided the following guideline to determine whether a state law is preempted by federal regulation:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption. OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008). "HOLA does not preempt UCL claims in which the 'predicated acts were violations of the general legal duties with which every business must comply.'" *Bertoli v. Wachovia Corp., FSB*, C11-03432 TEH, 2011 WL 5244687 (N.D. Cal. Nov. 3, 2011). "Only claims that are specific to a defendant's lending activities, as distinguished from legal duties applicable to all businesses, are preempted under HOLA." *Id.*

The duty not to commit fraud is one such general legal duty. In *Taguinod v. World Savings Bank*, the district court found that claims for fraud were typically preempted when the allegations addressed issues "related to fees, disclosures and interest rates." *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1070 (C.D. Cal. 2010). The *Taguinod* court held that when Plaintiffs alleged that changes were made to their loan documents after the documents had been signed, the claim for fraud was not preempted. *Id.* at 1070. Here, Plaintiffs allege that Defendant OneWest's customer service representatives purposely denied receiving

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 23

---

Plaintiffs' documents or purposely allowed Plaintiffs' application documents to
expire. SAC at 6. The Court finds that because these activities are merely
incidental to OneWest's role as a lender, they are not preempted by HOLA.
Although the fraud claim was dismissed above, it is without prejudice. The Court
does not find Plaintiffs' UCL or Rosenthal claims preempted by HOLA to the
extent such claims rely on the fraud claim described above. Thus, the claims are
dismissed without prejudice.

### b.  The Court GRANTS Trustee Defendants' Motion to Dismiss

Plaintiffs' second category of claims, claims against Trustee Defendants, is based
on the non-judicial foreclosure process. Plaintiffs allege that Trustee Defendants illegally
initiated the foreclosure process or foreclosed on Plaintiffs' properties. SAC at 6.

Plaintiffs allege that when they purchased their properties, they signed a Note or
Deed of Trust in exchange for a loan. Plaintiffs allege that these Notes and Deed of
Trusts are then pooled together and sold to a Trust. SAC at 87. The Trust issues bonds or
certificates and owes a fiduciary duty to the bondholders or "certificateholders."  These
Trusts are then serviced by the Servicer Defendants.[12] The Servicer signs a contract,
sometimes known as a Pooling and Servicing Agreement ("PSA") or a Trust Agreement,
with the Trust. *Id.* at 91. As relevant here, a Servicer's duties include collecting loan
payments from the Plaintiffs and submitting the payments to the Trust. Additionally, if
the Plaintiffs stop making payments on the loan, the Servicer Defendants are obligated
under the terms of the PSA or Trust Agreement to submit the delinquent payments
themselves; these payments are referred to as Advances. Because the Trusts are the Note
Holders, Plaintiffs conclude that when Servicer Defendants, Fannie Mae, or Freddie Mac
make payments to the Trust, the loan then is not in default with respect to the Note
Holder. Plaintiffs argue that if the loan was not in default, then the Trustee Defendants
erroneously and unlawfully foreclosed on the Plaintiffs' properties.

Based on this legal theory, Plaintiffs bring the following claims against Trustee
Defendants: (1) violations of California Commercial Code § 3602; and (2) negligence.

---

[12] *See, e.g.*, Lehman XS Trust Agreement (Dkt. 81) Ex. 1 at S-129 ("The Servicers will have primary responsibility
for servicing the Mortgage Loans including, but not limited to, all collection, advancing and loan-level reporting
obligations, maintenance of escrow accounts, maintenance of insurance and enforcement of foreclosure proceedings
with respect to the Mortgage Loans and the related Mortgaged Properties.").

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 24

---

### i.   Violations of California Commercial Code § 3602

Under California Commercial Code Section 3602, "an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument." Cal. Com. Code § 3602(a)(1).

Plaintiffs allege that foreclosure on their properties is a violation of California Commercial Code Section 3602 because the Servicer Defendants, Fannie Mae, or Freddie Mac made payments "on their behalf," therefore their loan obligations were not in default. SAC at 88. In Plaintiffs' Opposition, they clarify that they are not claiming to be third-party beneficiaries to the Trust Agreements or PSAs, but instead under the terms of the Notes or Deeds of Trusts there is a clause that provides that "[a]ny person who takes over [the promises and obligations included in the Note], including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note." Opp. at 2. Plaintiffs argue that when Servicer Defendants entered into the Trust Agreements and agreed to pay Advances on delinquent loans, Servicer Defendants took over the obligations under the Note, including making payments, and therefore Plaintiffs' loans were not in default.

The Court will use Plaintiff Sophy Bonsynat ("Plaintiff Bonsynat") to illustrate Plaintiffs' allegations. On August 2, 2007, Plaintiff Bonsynat gave a Note and Deed of Trust to Defendant Wells Fargo Bank, N.A. ("Defendant Wells Fargo") in exchange for a loan of $414,000 to purchase the property located on 939 East 19th St., Long Beach, CA 90806 ("19th St Property"). SAC at 127. Section 6(b) of the Note states: "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default." Bonsynat Note (Dkt. 40) Ex. 2. The Note also stated under Section 8: "Any person who takes over these obligations, including obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note." *Id.* It is Section 8 of the Note that provides the basis of Plaintiff Bonsynat's complaint.

Around September or October 2007, Plaintiff Bonsynat's Note and Deed of Trust were sold to Defendant Freddie Mac. Defendant Wells Fargo was to service the Note. SAC at 128. Shortly thereafter, Defendant Freddie Mac pooled Plaintiff Bonsynat's Note and Deed of Trust with others and sold them to a yet-to-be-identified FHML-sponsored, mortgage-backed Trust ("Freddie Mac Pass Through Pool"). *Id.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 25

---

After executing the Note and Deed of Trust, Plaintiff Bonsynat experienced financial hardship and was unable to make her loan payments. *Id.* at 128. On July 24, 2009, Defendant Wells Fargo sent Plaintiff Bonsynat a Notice of Default on behalf of Defendant Freddie Mac, acting as a trustee for a yet-to-be-identified Trust. The Trustee's Sale took place on August 11, 2010. The 19th Street Property was purchased by Trustee Freddie Mac for an unidentified Trust. *Id.* at 128-29.

Plaintiff Bonsynat alleges that Defendant Wells Fargo or Defendant Freddie Mac had taken over the payment obligations demanded by the Note. Plaintiff Bonsynat bases this allegation on the Freddie Mac Pass-Through Certificates Master Trust Agreement ("Freddie Mac Trust Agreement"), under which Defendant Freddie Mac guarantees timely loan payments to the Trust. *Id.* at 129. In order to satisfy the guarantee either Defendant Wells Fargo or Defendant Freddie Mac "took over" the loan payments. *Id.* Because the Defendants made payments on the Note to the Trust, the loan could not have been in default and foreclosing on the 19th St Property was unlawful. *Id.*

Defendants argue that any payments made by the Servicer, Fannie Mae, or Freddy Mac Defendants to the Trust were based on Trust Agreements or PSAs and are not made "on behalf" of the Plaintiffs. Mot. at 6. The Trust Agreements or PSAs were intended to protect the purchasers of the mortgage-backed bonds and certificates. *Id.* at 6. The Plaintiffs are not a party to these agreements and the agreements expressly prohibit unintentional third party beneficiaries. *Id.* Plaintiffs concede they are not third party beneficiaries to the Trust Agreements or PSAs. Opp. at 2.

Defendants also argue that the Trust Agreements and PSAs were not intended to curtail the lender's right to foreclose on a property when the borrower has stopped meeting his or her payment obligations. The Trust Agreements "expressly preserve the Servicer Defendants' ability to foreclose on Plaintiffs in the event of Plaintiffs' failure to pay." Mot. (Dkt. 101) at 8.[13] The Trust Agreements also make the payments recoverable. *Id.* Defendants argue that because Servicer Defendants can be reimbursed for the payments they provide when borrowers are delinquent, the payments are not intended to be final payments for the purpose of discharging the Plaintiffs' debts. *Id.* at 8-9. PSAs function in a similar fashion. Under PSAs, the Servicer Defendant is not required to make advance payments to cure a borrower's delinquency if the Servicer determines it would

---

[13] For example, the Fannie Mae Trust Agreement states that remedies for default include having a servicer pursue a pre-foreclosure sale of the related mortgaged property or pursue foreclosure. Mot. at 8.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 26

---

be a "nonrecoverable advance." *Id.* at 10. The PSAs also provide that the Servicer "shall
use reasonable efforts to foreclose upon or otherwise comparably convert the ownership
of properties securing such of the Mortgage Loans as come into and continue in default
and as to which no satisfactory arrangements can be made for collection of delinquent
payments." *Id.* at 10-11. Because any payments made by the Servicer, Freddie Mac, or
Fannie Mae Defendants are not final payments, the Defendants argue that these payments
are not evidence of the "taking over" Plaintiffs' obligations to pay back their loans.

Finally, Defendants argue that construing Section 8 of the Bonsynat Note in a
manner that relieves the Plaintiffs of their obligations to repay their loans is incompatible
with Section 6(b) of the Note, which states in plain language that a borrower who does
not pay the monthly payment due under the Note will be in default.

### 1.  Servicer Defendants, Fannie Mae, or Freddie Mac did not make payments "on behalf of" Plaintiffs

On a motion to dismiss, this Court accepts as true a plaintiff's well-pled factual
allegations and construes all factual inferences in the light most favorable to the plaintiff.
*Manzarek*, 519 F.3d at 1031. The Court is not required to accept as true legal conclusions
couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Here, the Court finds that dismissal is still proper even if it accepts as true that
Servicer Defendants made Advances to the Trustee Defendants when the Plaintiffs were
delinquent on their loan payments. The Court does not have to accept the legal
conclusion that these Advances constituted the Servicer Defendants "taking over"
Plaintiffs' loan obligations. The Court bases this decision on three findings: (1) the Trust
Agreements and PSAs were not created for the benefit of the Plaintiffs; (2) the Trust
Agreements and PSAs did not constitute a forfeiture of the right to foreclose on
Plaintiffs' property; and (3) default is clearly defined as Plaintiffs' failure to make loan
payments.

The Court will use the SAC Exhibit 1 ("Lehman XS Trust Agreement") as an
illustrative example. The Lehman XS Trust Agreement lists Defendant Aurora Loan
Services, LLC ("Servicer Defendant Aurora") as the "Master Servicer." SAC, Ex. 1.
Section S-140 of the Lehman XS Trust Agreement states:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                                                    Page 27

---

> Each Servicer . . . will generally be obligated to make Advances with respect to delinquent payments of principal of and interest on the Mortgage Loans it services . . . to the extent that such Advances, in its judgment, are *reasonably recoverable from future payments and collections*, insurance payments or proceeds of liquidation of such Mortgage Loans. . . . *The purpose of making these Advances is to maintain a regular cash flow to the Certificateholders*, rather than to guarantee or insure against losses.

SAC, Ex. 1 at S-140 (emphasis added).

The Trust Agreements and PSAs were not created for the benefit of the Plaintiffs because it states on the face of the Exhibit submitted by the Plaintiffs that the Trust Agreements are for the benefit of the Certificate Holders. Therefore, the Plaintiffs cannot argue that the Trust Agreements are evidence of the Servicer Defendants taking over Plaintiffs' loan obligations.

The Trust Agreements and PSAs do not constitute a forfeiture of the right to foreclose on Plaintiffs' property because the Trust Agreement plainly states that Servicer Defendant Aurora is only required to make Advances for delinquent loan payments to the extent that such advances are *reasonably recoverable from future payments and collections*. The language of the document shows that by paying the Advances, Defendant Aurora was not "taking over" the Plaintiffs' obligations because Plaintiffs were still ultimately responsible for paying back their loans. Furthermore, the Advances were reimbursable, which meant the debt owed to the Trust was ultimately not satisfied by the Servicer Defendants' Advances. SAC, Ex. 1 ("The Master Servicer, a Servicer or the Trustee in its capacity as successor Master Servicer, as applicable, will be entitled to recover any Advances made by it with respect to a Mortgage Loan out of late payments thereon or out of related liquidation proceeds and insurance proceeds, or, if those amounts are insufficient, from collections on other Mortgage Loans.")

Finally, "default" is clearly defined as Plaintiffs' failure to make loan payments. *See* Bonsynat Note (Dkt. 40) Ex. 2 ("If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.").

For the foregoing reasons, the Court finds that by entering into Trust Agreements and PSAs the Servicer Defendants, Fannie Mae, and Freddy Mac did not "take over"

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 28

---

Plaintiffs' payment obligations. Therefore, no payments were made "on behalf" of the Plaintiffs and the loans were in default.

### 2.   Foreclosure is proper when a borrower defaults on their loan obligation

"Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000). A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995). If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.,* 209 Cal. 231, 236-237, 286 P. 693 (1930).

*Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1061 (E.D. Cal. 2010).

In Plaintiff Bonsynat's factual allegations, she admits she experienced financial hardship and was unable to make her loan payments. SAC at 128. California law is clear that when the borrower has signed an agreement offering his or her property as security, the lender may non-judicially foreclose on the property when the borrower stops making payments. Because the Court found above that payments made by the Servicer Defendants, Fannie Mae, or Freddie Mac were not "on behalf of" the Plaintiffs, the Servicer Defendants were within their rights to foreclose on properties where the Plaintiffs had stopped making loan payments.

The Court finds it unnecessary to address Defendants' arguments that Plaintiffs did not offer tender to stop the foreclosures, that California Commercial Code § 3602 does not apply to non-judicial foreclosure sales, or that California Commercial Code § 3602 does not create a private cause of action, as the Court dismisses with prejudice on the grounds that Defendants did not "take over" Plaintiffs' payment obligations. As it is clear on the face of the Trust Agreements and PSAs that any advance payments were not made for the benefit of the borrowers and the right to foreclosure had not been waived,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 29

---

the Plaintiffs cannot amend the pleadings to state a viable cause of action on those grounds.

Thus, the Court DISMISSES Plaintiffs' violation of California Commercial Code § 3602 claim WITH PREJUDICE.

### ii.    Negligence

The elements of negligence include duty, breach of duty, proximate cause, and damages. *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007). To determine the scope of a duty, a court's considerations include "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 820 (1997); *see also Eric M. v. Cajon Valley Union Sch. Dist.*, 174 Cal. App. 4th 285, 293 (2009). Furthermore, negligence requires that the breach be a "failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court of Santa Barbara Cnty.*, 41 Cal. 4th 747, 754 (2007).

Financial institutions typically do not owe a duty of care to a borrower when its activities do not exceed those of a conventional money lender. *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Ct. App. 1991). Furthermore, a "trustee under a deed of trust has neither the powers nor the obligations of a strict trustee; rather, he serves as a kind of common agent for the trustor and the beneficiary." *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1111 (1990). "[The trustee's] agency is a passive one, for the limited purpose of conducting a sale in the event of the trustor's default or reconveying the property upon satisfaction of the debt." *Id.* "[A] trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Id.* at 1112.

Plaintiffs allege that the Servicer Defendants, Trustee Defendants, Fannie Mae and Freddie Mac owed Plaintiffs a duty of care leading up to the foreclosure proceedings and

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                   Page 30

---

through the foreclosure sales to ensure Plaintiffs were not unnecessarily exposed to property loss. SAC at 148. Based on Plaintiffs' theory that the Servicer Defendants, Fannie Mae, or Freddie Mac made mortgage payments on their behalf, Plaintiffs allege their loans were not in default and Defendants did not have a right to foreclose on Plaintiffs' properties. *Id.* In Plaintiffs' Opposition, Plaintiffs concede that foreclosure is a traditional money lending activity. Opp. at 9. Plaintiffs argue that *illegal* foreclosure is outside of the money lender's scope of activities. *Id.* Plaintiffs also allege that Defendants' behavior has been morally blameworthy and their alleged misconduct has affected millions of consumers. *Id.* at 9.

The Court finds Plaintiffs are unable to establish a breach of duty, and therefore the cause of action for negligence fails. Plaintiffs claim that Defendants foreclosed on properties with loans that were not in default because a third party made payments on Plaintiffs' behalf. SAC at 148. This allegation was dismissed with prejudice above. Because Plaintiffs acknowledged that foreclosure is within the traditional money lending scope and their theory of illegal foreclosure is dismissed, Plaintiffs cannot claim Defendants owed them a duty of care. Thus, the motion to dismiss the negligence claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

### c.  Leave to Amend

On June 25, 2012, this Court held a Status Conference which set the deadline for submitting the SAC and related motions. On that date the Court made it known there was a strong possibility that the SAC would be Plaintiffs' last opportunity to amend and file their complaint. Tr. (Dkt. 83) at 16:6-16:14. The SAC is not being dismissed in its entirety with prejudice because this version of the complaint is the first one to be reviewed on its merits, and thus previously amended versions were submitted without the benefit of any court's input or guidance. However, there will be no leave to further amend the complaint beyond the third amended complaint. The Court notes that Plaintiffs had filed a previous version of this complaint under a different case number in this district[14] and, as stated in the Status Conference, the burden is on the Plaintiff to draft a well-pled complaint so that Defendants are not forced to litigate for an unnecessarily drawn out amount of time.

---

[14] Case No. 11-01345 (filed 9/6/12 in the Central District of California; voluntarily dismissed).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. CV 11-10520-DOC (RNBx)                    Date:  November 26, 2012
                                                                              Page 31

---

**IV.     Disposition**

     For the foregoing reasons, the Court GRANTS Servicer Defendants' Motion to Dismiss. The claims of fraud, violations of California Civil Code § 1788, and violations of California Business and Professions Code § 17200 are DISMISSED WITHOUT PREJUDICE and the claim of negligence is DISMISSED WITH PREJUDICE.

     The Court GRANTS Trustee Defendants' Motion to Dismiss WITH PREJUDICE.

     Plaintiff shall file an amended complaint, if at all, on or before December 10, 2012.

     The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN                                                    Initials of Deputy Clerk: jcb